UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CAROL JASON,

          Plaintiff,

      v.

CAROLYN W. COLVIN,

          Defendant.

CASE NO. C14-0971JLR

ORDER AFFIRMING DECISION OF COMMISSIONER OF SOCIAL SECURITY

## I.  INTRODUCTION

Plaintiff Carol Jason appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner"), which denied her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, after a hearing before an Administrative Law Judge ("ALJ").  The court has considered the ALJ's decision, the administrative record ("AR"), and the parties' memoranda.  Being fully advised, the court AFFIRMS the Commissioner's final decision and DISMISSES this action WITH PREJUDICE.

## II.     BACKGROUND

The facts of the case are set forth in the ALJ's decision (*see* Administrative Record ("AR") (Dkt. # 9) at 11-34), the administrative hearing transcript (AR at 35-97), and the briefs of the parties (Op. Mem. (Dkt. # 12); Resp. (Dkt. # 13); Reply (Dkt. # 14)). They are only briefly summarized here.

Ms. Jason was born in 1963, and was 49 years old on March 31, 2012, which was her date last insured for DIB.  (AR at 68.)  Before she stopped working in 2007, she was employed as a substitute teacher and a grocery checker, in temporary accounting jobs, at a construction company, and as a school board president.  (*Id.* at 77, 281, 292.)  Ms. Jason applied for DIB on March 7, 2011, alleging that her disability began on July 1, 2007.  (AR at 14, 253.)  Because her date last insured was March 31, 2012, she must establish disability within the meaning of the Social Security Act after July 1, 2007, and on or before March 31, 2012, to be qualified for DIB.  *See* 20 C.F.R. § 404.131.

The Commissioner denied Ms. Jason's application for DIB initially and on reconsideration.  (*Id.* at 14.)  On November 26, 2011, Ms. Jason filed a written request for a hearing.  (*Id.*)  On July 3, 2012, an ALJ held a hearing on Ms. Jason's application.  (*Id.*)  The ALJ held a supplemental hearing on January 30, 2013.  (*Id.*)  Following both hearings, the ALJ issued an unfavorable decision denying Ms. Jason any benefits.  (*Id.* at 14-28.)

In rendering his decision, the ALJ followed the five-step sequential process for determining whether a person is disabled that is detailed in the Social Security

1   Administration's regulations.[1]  Specifically, at step one, the ALJ found that Ms. Jason

2   had not engaged in substantial gainful activity between her alleged onset date of July 1,

3   2007, and her date last insured for DIB on March 31, 2012.  (*Id.* at 16.)  At step two, the

4   ALJ found that Ms. Jason suffered from the following severe impairments:  depression,

5   anxiety, degenerative disk disease of the lumbar and cervical spine, fibromyalgia,

6   Crohn's disease, obesity, asthma, and obstructive sleep apnea.  (*Id.*)  At step three, he

7   found that these impairments did not meet or medically equal one of the impairments

8   listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[2]  (*Id.*17-18.)  At step four, he found

9   that Ms. Jason had the residual functional capacity ("RFC") to perform light work

10  without concentrated levels of gas odors, fumes, or chemicals; she could not perform any

11  climbing of ropes or ladders, or work at any height; she could not work in close

12  proximity to heavy machinery; she required toilet facilities on the work premises; she

13  was limited to unskilled, repetitive, and routine work; she could have no contact with the

---

15  [1] *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Bowen v. Yuckert*, 482 U.S. 137,
    140-142 (1987); *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th cir. 2001) (listing the five
16  steps).  In steps one through four, the burden of proof rests upon the claimant to establish a prima
    facie case of entitlement to disability benefits. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.
17  1999).  This burden is met once a claimant establishes that a physical or mental impairment
    prevents her from engaging in her previous occupation.  20 C.F.R. §§ 404.1520(a)(4),
18  416.920(a)(4).  If a claimant cannot do her past relevant work, the ALJ proceeds to step five, and
    the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to
19  other work; and (2) specific jobs exist in the national economy which the claimant can perform.
    *Batson v. Comm'r of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (9th Cir. 2004).  If a
20  claimant cannot make an adjustment to other work in the national economy, the claimant is
    "disabled."  20 C.F.R. §§ 404.1520(a)(4)(i-v), 416.920(a)(4)(i-v).

21  [2] If the claimant's severe impairments "meet or equal" one or more of the listed
    impairments, then the claimant is disabled.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iii);
22  416.920(a)(4)(iii).  That was not the case here, though, so the ALJ moved onto step four of the
    five-part sequential process.

1   public, but she could work frequently with supervisors or co-workers.  (*Id.* at 18-27.)

2   The ALJ also found that Ms. Jason could not perform her past relevant work.  (*Id.* at 27.)

3   At step five, he found that she could perform other work existing in the national

4   economy, and therefore was not disabled.  (*Id.* at 27-28.)

5       On May 1, 2014, the Appeals Council denied Ms. Jason's request for review,

6   making the ALJ's decision the final agency decision.  (*Id.* at 1-6.)  Ms. Jason now seeks

7   judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

8                           **III.     ANALYSIS**

9       **A.  Standard of Review**

10      Under 42 U.S.C. § 405(g), the court reviews the Commissioner's decision to

11  determine whether it is free from legal error and supported by substantial evidence in the

12  record as a whole.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial

13  evidence means "such relevant evidence as a reasonable mind might accept as adequate

14  to support a conclusion."  *Id.*  The "evidence must be more than a mere scintilla but not

15  necessarily a preponderance."  *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003).

16  The court must review the record as a whole, weighing both the evidence that supports

17  and the evidence that detracts from the [Commissioner's] conclusion," but the court must

18  not substitute its discretion for that of the Commissioner.  *Desrosiers v. Sec'y of Health*

19  *and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988).  "The ALJ is responsible for

20  determining credibility, resolving conflicts in medical testimony, and for resolving

21  ambiguities."  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

22

1  The court will uphold the Commissioner's decision when the evidence is

2  susceptible to more than one rational interpretation.  *Burch v. Barnhart*, 400 F.3d 676,

3  679 (9th Cir. 2005).  The court may review only the reasons stated by the ALJ "and may

4  not affirm the ALJ on a ground upon which he did not rely."  *Orn*, 495 F.3d at 630; *see*

5  *also Connett*, 340 F.3d at 874.  The court, however, will not reverse the Commissioner's

6  decision for harmless error, which exists when it is "clear from the record that an ALJ's

7  error was 'inconsequential to the ultimate nondisability determination.'"  *Robbins v. Soc.*

8  *Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (quoting *Stout v. Comm'r*, 454 F.3d 1050,

9  1055 (9th Cir. 2006)); *see also Burch*, 400 F.3d at 679.

10  **B.  The ALJ's Credibility Determinations Concerning Ms. Jason's Testimony**

11  The ALJ found that Ms. Jason's "medically determinable impairments could

12  reasonably be expected to cause [her] alleged symptoms."  (AR at 19.)  However, he also

13  found that Ms. Jason's "statements concerning the intensity, persistence and limiting

14  effects of [her] symptoms [we]re not entirely credible . . . ."  (*Id.*; *see also id.* at 24

15  ("[T]he claimant is not entirely credible.").)  Accordingly, he gave "little weight" to her

16  statements regarding "functioning."  (*Id.* at 24.)  Ms. Jason complains that the ALJ failed

17  to give clear and convincing reasons for rejecting her subjective complaints about her

18  symptoms and functional limitations.  (Mot. at 4-16.)

19  Although credibility determinations are the province of the ALJ, *see Fair v.*

20  *Bowen*, 885 F.2d 597, 604 (9th Cir. 1989), an ALJ cannot arbitrarily reject a claimant's

21  testimony.  The Ninth Circuit has clarified that once a claimant has established an

22  underlying medical impairment that could be reasonably expected to produce some

1  subjective symptoms, an ALJ must give specific, clear, and convincing reasons to reject

2  allegations of subjectively disabling symptoms.  *See Thomas v. Barnhart*, 278 F.3d 947,

3  959-60 (9th Cir. 2002).  The ALJ's findings are entitled to deference if they are supported

4  by substantial evidence and are "sufficiently specific to allow a reviewing court to

5  conclude the adjudicator rejected the claimant's testimony on permissible grounds and

6  did not arbitrarily discredit a claimant's testimony regarding [subjective symptoms]."

7  *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991) (en banc ) (internal quotations

8  omitted).  That standard is met in this case.

9      The ALJ cited several bases for his conclusion regarding Ms. Jason's credibility.

10  First, the ALJ found that evidence of Ms. Jason's daily activities, including

11  homeschooling her daughters (who were 12 and 16 at the time of the hearing), managing

12  her daughters' theatrical activities,[3] dancing at home,[4] and exercising at the gym[5] were

13

14      [3] (*See, e.g.*, AR at 19 ("While the claimant stated that she stopped homeschooling her

15  children in June 2011, the record reveals that she continued to homeschool through her date last
    insured [March 31, 2012]. . . .  In addition, to homeschooling . . . , the record reveals that the

16  claimant was quite active in developing the performance careers of her two daughters.  These
    activities demonstrate that the claimant has been more active than alleged.") (citing Exhibit 20F

17  at 11, 66, 74 (which is found at AR at 1174, 1230, 1238)); *see id.* at 21 ("While the claimant
    testified that she ceased homeschooling in June 2011 due to pain, the record reveals reports of

18  mild pain as well as the claimant continuing to homeschool her daughters. . . . In February 2012,
    the claimant reported to Dr. Stroemel that she had been 'managing homeschooling as well as

19  theatrical and musical activities of her daughters.'") (citing Exhibit 20F at 66) (which is found at
    AR at 1230).)

20      [4] (*See, e.g.*, AR at 21 ("Contrary to allegations of disabling pain and fatigue, the record
    reveals that the claimant was capable of dancing at her home.") (citing Exhibit 13F at 134 (which

21  is found at AR at 885)); *see id.* at 24 ("[T]he claimant revealed several physical activities that are
    inconsistent with her alleged limitations from pain.  The record demonstrates that the claimant

22  would dance barefoot and exercise regularly . . . .") (citing Exhibit 13 at 134, 276; Exhibit 20F at
    10 (which are found at AR at 885, 1018, 1174).)

inconsistent with her allegations of complete disability.  (*See, e.g.*, AR at 24.)  The ALJ noted that "claimant's ability to formulate lesson plans and interact with performance instructors and directors indicates that she was not as limited as alleged."  (AR at 22.) Thus, the ALJ concluded that Ms. Jason "was capable of performing unskilled, repetitive, and routine work."  (*Id.*)

It is well established that the nature of daily activities may be considered when evaluating credibility.  *See Burch*, 400 F.3d at 680; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  Indeed, non-work activities that are inconsistent with a claim of total disability will undermine the claimant's credibility.  *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009); *see also Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (finding that the claimant's daily activities of caring for two young children and other household chores undermined her claims of total disability).  In the Ninth Circuit, if a claimant engages in daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities.  *See Fair*, 885 F.2d at 603; *see also Morgan v. Comm'r Soc Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (finding that the claimant's ability to fix meals, do laundry, work in the yard, and occasionally care for his

---

[5](*See, e.g.*, AR at 21 ("The record indicates that the claimant's pain was controlled sufficiently to allow regular workouts at the gym.") (citing Exhibit 13F at 267 (which is found at AR at 1018 ("She is able to work out at the YMCA without any exacerbation of back pain or arm pain."))); *see id.* at 23 ("As noted above, the claimant had sufficient energy to workout regularly.") (citing Exhibit 20F at 10 (which is found at AR at 1174 ("She . . . has been going to the gym regularly."))).)

1    friend's child was evidence of claimant's ability to work); *Tommasetti v. Astrue*, 533 F.3d

2    1035, 1040 (9th Cir. 2005) (finding that the claimant's ability to take care of his ailing

3    sister was good reason for the ALJ to discount the claimant's testimony on the extent of

4    his disability); *Thomas*, 278 F.3d at 959 (holding that the ability to perform daily

5    activities such as cooking, washing dishes, and shopping indicated claimant was not as

6    disabled as claimed and could perform light work).

7          Courts have found that evidence of homeschooling or providing daily care for

8    children, along with other daily activities, can provide a sufficient basis for rejecting a

9    claimant's assertion of complete disability. *See, e.g.*, *Rollins v. Massanari*, 261 F.3d 853,

10   857 (9th Cir. 2001) (finding that the claimant's ability to care for her young children,

11   cook, do other household chores, and attend therapy and other meetings undermined her

12   testimony on the severity of her disability); *Walton v. Colvin*, No. 3:13-cv-01271-SI,

13   2014 WL 5359811, at * 5 (D. Or. Oct. 20, 2014) (concluding that evidence of providing

14   childcare for two children, one of whom had "high needs," along with other household

15   chores, provided sufficient basis for ALJ to doubt the plaintiff's credibility regarding her

16   physical symptoms); *Burgess v. Colvin*, No. CV-12-0407-JTR, 2013 WL 5962966, at *7

17   (E.D. Wash. Nov. 7, 2013) (concluding that evidence of homeschooling children, among

18   other daily activities and evidence, is an appropriate basis for discounting a plaintiff's

19   subjective complaints); *Capobores v. Astrue*, No. CV 1:09-682-REB, 2011 WL 1114256,

20   at *9 (D. Idaho Mar. 25, 2011) (concluding that the ALJ did not err in finding that

21   homeschooling children, cooking easy meals, grocery shopping with her children's

22   assistance, organizing her house, driving a car, and taking care of her personal needs

reflected a level of activity inconsistent with the claimant's testimony concerning the severity of her symptoms).  "[I]f, despite [her] claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Burch*, 400 F.3d at 681. Thus, the court cannot conclude that the ALJ's reliance on evidence that Ms. Jason homeschooled her daughters, managed their theatrical activities, danced at home, or exercised at the gym, in evaluating her credibility regarding her symptoms was error.

Ms. Jason, however, argues that there is also evidence in the record indicating that she experienced difficulty accomplishing these activities and that her children and husband provided substantial assistance to her.  (Op. Mem. at 4-5, 6-9.)  She argues that the ALJ failed to consider this evidence of when making his credibility determination.[6] She also notes that the evidence of dancing at home comes from a single treatment record in May 2010 indicating that she cut her foot on glass while dancing barefoot with her daughter and that the evidence of her regular activities at the gym comes from just two treatment notes.  (Op. Mem. at 10 (citing AR at 885, 1018).)  Further, as Ms. Jason's

---

[6] Ms. Jason also argues that she presented evidence to the Appeals Council that, in September 2012, her husband sent their daughters back to school because Ms. Jason "was not able to function."  (Op. Mem. at 9 (citing AR at 358).)  However, this evidence refers to events several months after Ms. Jason's last date insured for DIB (which was March 31, 2012) and, therefore, the court agrees with the Commissioner that it does not undermine the ALJ's conclusion.

1    opening memorandum correctly argues, the "mere fact that a claimant has carried on

2    certain daily activities, such as grocery shopping, driving a car, or limited walking for

3    exercise, does not in any way detract from her credibility as to her overall disability."

4    (Op. Mem. at 6 (quoting *Moore v. Barnhart*, 278 F.3d 920, 925, n.2 (9th Cir. 2001).)

5    Indeed, disability claimants do not need to lock themselves indoors and remain sedentary

6    to ensure receipt of disability benefits. *Reddick v. Charter*, 157 F.3d 715, 722 (9th Cir.

7    1998); *Satterwaite v. Astrue*, 781 F. Supp. 3d 898, 911 (D. Ariz. 2011).

8         The court, however, is not persuaded that the ALJ committed error here. An ALJ

9    is not required to specifically reference every piece of evidence in the record when

10   writing his opinion. *However ex rel Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir.

11   2003). Further, an ALJ can rely on a claimant's participation in certain daily activities

12   when the claimant's description of those activities contradicts claims of a totally

13   debilitating impairment. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012)

14   (citing cases) ("Even where [a claimant's] activities suggest some difficulty functioning,

15   they may be grounds for discrediting the claimant's testimony to the extent that they

16   contradict claims of a totally debilitating impairment."); *Berry v. Astrue*, 622 F.3d 1228,

17   1235 (9th Cir. 2010) (finding that "the inconsistencies in the claimant's reported

18   symptoms and activities adequately support the ALJ's adverse credibility finding and

19   justify his decision to discount some of the complainant's subjective complaints"). The

20   ALJ properly did so here. The fact that Ms. Jason provides an alternative interpretation

21   of the evidence does not invalidate the ALJ's credibility finding. *See Fair v. Bowen*, 885

22   F.2d 597, 604 (9th Cir. 1989); *see also Burch*, 400 F.3d at 680-81 ("Although the

1  evidence of [the claimant's] daily activities may also admit of an interpretation more

2  favorable to [the claimant], the ALJ's interpretation was rational, and '[the court] must

3  uphold the ALJ's decision where the evidence is susceptible to more than one rational

4  interpretation.'") (quoting *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The

5  court therefore concludes that the ALJ properly considered Ms. Jason's participation in

6  homeschooling, managing her daughters' theatrical endeavors, as well as her other

7  activities, in assessing the credibility of her testimony concerning the nature of her

8  symptoms and the degree of her disability.[7]

9       In challenging Ms. Jason's credibility with respect to her symptoms, the ALJ also

10  stated that "[w]hile the claimant stated that pain and fatigue limited her ability to

11  function, the record indicates that the claimant's pain was significantly improved with

12  treatment."  (AR at 24.)  In support of this statement, the ALJ cited specific portions of

13  the medical record from 2011 and 2012 in which Ms. Jason reported that she had little or

14  no pain following specific medical treatments.  (*See id.* (citing Ms. Jason's reports to Drs.

15  Kang, Stroemel, and Gellorn); *see also id.* at 21 (citing specific portions of the medical

16  record, the ALJ states that "[w]ith the help of medication, the claimant demonstrated

17  good control over her pain.").)  In addition, the ALJ also found that "[i]n terms of the

18

19       [7] If, however, the ALJ's reliance on either Ms. Jason's ability to dance barefoot at home or participate in workouts at the gym was error, the court finds, in light of the other grounds supporting the ALJ's credibility finding, that it was harmless.  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (stating that, even if one reason supporting a credibility finding is invalid, as long as there remains substantial evidence supporting the ALJ's conclusions on credibility, and the error does not negate the ALJ's ultimate conclusion, the error is harmless); *see also Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

1   claimant's alleged physical impairments, the overall record demonstrates that she is not

2   as limited as alleged" (AR at 19), and that a "chronological review of the claimant's

3   medical history indicates that her physical symptoms were never disabling prior to her

4   date of last insured" (AR at 20) or were controlled with treatment and medication.  (*See*

5   *generally* AR at 20-22 (citing to specific portions and pages of the medical record).)  The

6   ALJ also found that "a chronological review of the claimant's treatment history indicates

7   that her psychological symptoms were never disabling prior to her date of last insured"

8   (AR at 22), and were controlled through treatment and medication.  (*See generally* AR at

9   22-24.)  In so finding, the ALJ relied upon specific descriptions of and citations to Ms.

10   Jason's medical records.  (*See generally* AR at 19-24.)  An ALJ may rely upon the

11   effectiveness of treatment to support an adverse credibility finding.  *See Morgan*, 169

12   F.3d at 599-600.

13          Ms. Jason argues, however, that "[t]he lengthy administrative record in this case

14   establishes that Ms. Jason's different impairments were not consistently controlled with

15   treatment." (Op. Mem. at 11.)  Indeed, Ms. Jason argues that the record reveals that her

16   pain, medical conditions, and mental impairments did not abate or resolve and that the

17   ALJ's contrary finding was error.  (Op. Mem. at 11-16.)  In making her arguments, Ms.

18   Jason cites to different pages of her medical records than those generally relied upon by

19   the ALJ.  (*See id.*)  It is true that, in addition to the references in the medical records cited

20   by the ALJ regarding Ms. Jason's positive responses to treatment or medication or to

21   stability or improvement in her various physical or psychological conditions or pain

22   level, there are notations of recurrent issues and pain related to those conditions.

1    Nevertheless, the ALJ made clear that his assessment was not based on a cherry-picked

2    medical record, but rather on a "chronological review" (AR 20, 22) of Ms. Jason's

3    "overall record" (AR 19, 22, 24).  The court's review of the ALJ's written decision and

4    his extensive citation to Ms. Jason's medical records confirms this fact.  "The ALJ is

5    responsible for resolving conflicts in the medical record." *Carmickle v. Comm'r, Soc.*

6    *Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008).  Thus, the court concludes that the ALJ

7    did not err in concluding that the overall record reflects that Ms. Jason's symptoms and

8    pain were controlled by treatment prior to her last insured date and for discounting her

9    credibility on that basis.

10           Finally, in evaluating Ms. Jason's credibility, the ALJ also cited contradictions

11   between Ms. Jason's testimony and the record evidence.  (*See, e.g.*, AR at 24 ("The

12   claimant's statements regarding her condition, and her credibility, are undermined by

13   several inconsistencies in the record.  The [c]laimant stated that she was able to

14   homeschool her two daughters until June 2011.  Nonetheless, the record reveals that she

15   continued to manage the homeschooling as well as the theatrical and musical activities of

16   her daughters through her date of last insured.") (citing Exhibit 13F at 134, 267; 20F at

17   10).)  Ms. Jason does not address the ALJ's reliance on the foregoing inconsistency

18   concerning the date she testified that she ceased homeschooling her children and

19   statements in her medical records that indicate she ceased doing so at a much later date.

20   (*See generally* Op. Mem.)  The ALJ may rely upon inconsistencies in Plaintiff's

21   testimony and her statements to her doctors when assessing her credibility.  *See Moisa v.*

22   *Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (listing conflicts between claimant's

1    testimony and her conduct and internal inconsistencies in testimony as examples of

2    findings that would allow a reviewing court to conclude that an ALJ rejected testimony

3    on permissible grounds).  Thus, the court concludes that the ALJ did not err by

4    concluding that Ms. Jason "is not fully credible" here.  (*See* AR at 24.)

5         This court has a limited role in these proceedings and may not substitute its own

6    judgment for that of the ALJ even if it might justifiably have reached a different result

7    upon a de novo review.  *See* 42 U.S.C § 405(g).  The ALJ reasonably viewed the

8    evidence of Ms. Jason's daily activities and the other evidence cited above as

9    undermining her claims concerning her limitations and the intensity of her symptoms.

10   *See Rollins*, 261 F.3d at 857 ("It is true that [the claimant's] testimony was somewhat

11   equivocal about how regularly she was able to keep up with all of these activities, and the

12   ALJ's interpretation of her testimony may not be the only reasonable one.  But it is still a

13   reasonable interpretation and is supported by substantial evidence; thus, it is not our role

14   to second-guess it.").  The grounds cited by the ALJ constituted clear and convincing

15   grounds supported by substantial evidence for finding Ms. Jason's symptom testimony

16   "not entirely credible" and giving her statements on the subject "little weight."  (AR 22,

17   24.)

18        **C.  The ALJ's Evaluation of Medical Source Opinions**

19        Ms. Jason argues that the ALJ erred in his evaluation of three medical source

20   opinions.  (Op. Mem. at 16-23.)  Specifically, the ALJ gave "little weight" to (1) two

21   medical source statements (dated April 2012, and July 2012, respectively) provided by

22   Ms. Jason's treating physician, Dr. Toshiko Magnus, (2) the opinion of Ms. Jason's

1    treating psychologist, Dr. Julie Stoemel, and (3) the opinion of examining psychologist,

2    Dr. Enika Cocoli.  (AR at 25-26 (detailing the ALJ's analysis of the doctors' opinions at

3    issue).)

4         An ALJ is not bound by the medical opinion of a treating physician on the

5    ultimate question of disability.  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  In

6    conjunction with the relevant regulations, however, the Ninth Circuit has "developed

7    standards that guide [the court's] analysis of an ALJ's weighing of medical evidence."

8    *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Ryan v. Comm'r of Soc.*

9    *Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).  Specifically, the court distinguishes between

10   (1) those who treat the claimant (treating physicians), (2) those who examine the claimant

11   (examining physicians), and (3) those who neither treat nor examine the claimant

12   (nonexamining physicians).  *Id.*  Ordinarily, the opinion of a treating physician is entitled

13   to greater weight than an examining physician, and the opinion of an examining

14   physician is likewise entitled to greater weight than a nonexamining physician.  *Id.*

15   Further, the opinion of a nonexamining physician cannot by itself constitute substantial

16   evidence that justifies the rejection of the opinion of either an examining or treating

17   physician.  *Hill v. Astue*, 698 F.3d 1153, 1160 (9th Cir. 2012).  The opinions of non-

18   treating and non-examining physicians may serve as substantial evidence when the

19   opinions are consistent with independent clinical evidence or other evidence in the

20   record.  *Morgan*, 169 F.3d at 600.

21        To reject an uncontradicted opinion of a treating or examining doctor, the ALJ

22   must state clear and convincing reasons that are supported by substantial evidence.  *Ryan*,

1  528 F.3d at 1198.  "If a treating or examining doctor's opinion is contradicted by another

2  doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons

3  that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012 (quoting *Ryan*,

4  528 F.3d at 1198).  An ALJ can satisfy the "substantial evidence" requirement by "setting

5  out a detailed and thorough summary of the facts and conflicting evidence, stating his

6  interpretation thereof, and making findings." *Id.* (quoting *Reddick*, 157 F.3d at 725).  Ms.

7  Jason does not state which standard should apply here, but rather argues that the ALJ

8  failed both.  (Op. Mem. at 17.)  The government also does not take a position regarding

9  which standard applies either (*see generally* Resp.), and therefore, unless otherwise stated

10 below, the court assumes that the higher standard of clear and convincing reasons applies.

11   **1.  Dr. Toshiko Magnus**

12      In April 2012, Dr. Magnus completed a form questionnaire at Ms. Jason's request

13 and his answers are contained in the administrative record as a medical source statement.

14 (*See* AR at 1145-50.)  He stated that "most of the answers marked are not due to thyroid

15 disease but due to myofascial pain and asthma." (*Id.* at 1147.)  He opined that Ms.

16 Jason's symptoms constantly interfered with her attention and concentration, even when

17 she performed simply tasks.  (*Id.* at 1148.)  He opined that she would be unable to

18 perform detailed or complicated tasks, meet strict deadlines, or perform fast-paced tasks.

19 (*Id.*)  He stated that she should not interact closely with co-workers or supervisors, or

20 have public contact.  (*Id.*)  He offered the opinion that she should not be exposed to work

21 hazards. (*Id.*)   Dr. Magnus stated that Ms. Jason could walk no more than two blocks

22 without rest; she could sit, stand, or walk for less than two hours in an eight-hour day

1    (except that if she was sitting in a recliner then she could sit for eight hours); and she

2    could sit for no more than five minutes at a time (unless she was in a recliner) and could

3    stand for no more than 15 minutes at a time.  (*Id.* at 1147-48.)  He opined that she would

4    need to shift positions at will, have unscheduled breaks every hour, and elevate her legs

5    with prolonged sitting, including 100% of the time in an eight-hour workday with a

6    sedentary job.  (*Id.* at 1148.)  Dr. Magnus also opined that Ms. Jason occasionally could

7    lift less than 10 pounds and could reach only 10% of the time with her right arm and not

8    at all with her left.  (*Id.* at 1148-49.)  He also stated that she could not bend or twist, and

9    should avoid extreme heat (but not cold), high humidity, fumes, odors, dusts, gases,

10   perfumes, solvents, cleaners, and chemicals.  (*Id.* at 1149.)

11          In July 2012, Dr. Magnus submitted a second medical source statement.  (*Id.* at

12   1312-16.)  Dr. Magnus opined that the primary cause of Ms. Jason's pain was a

13   combination of disk bulges with foraminal stenosis and myofascial pain.  (*Id.* at 1312.)

14   He also opined that her pain was "likely exacerbated" by Ms. Jason's "chronic anxiety."

15   (*Id.* at 1314.)  He stated that Ms. Jason had been compliant with several different types of

16   treatment with no appreciable effect for her pain.  (*Id.* at 1314-15.)  Finally, he opined

17   that Ms. Jason's pain increased with physical activity and that Ms. Jason's pain was

18   incapacitating.  (*Id.*)

19          The ALJ gave "little weight" to Dr. Magnus's opinions.  (*Id.* at 25, 26.)  The ALJ

20   discounted Dr. Magnus's opinions because he found that they were based on Ms. Jason's

21   subjective reports which he had previously found to be "note [sic] entirely credible."

22   (*Id.*)  The ALJ also found Dr. Magnus's opinions concerning Ms. Jason's abilities to be

1    inconsistent with Ms. Jason's homeschooling of her children and management of their

2    theatrical training.  (*Id.*)  Citing specific portions of the medical record, the ALJ also

3    found Dr. Magnus's opinions to be inconsistent with Ms. Jason's reports to other medical

4    providers of managed pain.  (*Id.*)

5        This court previously found that the ALJ did not err in finding Ms. Jason's

6    statements concerning her symptoms "not entirely credible" (AR at 19).  *See supra*

7    § III.B.  Further, Ms. Jason acknowledges that Dr. Magnus "considered Ms. Jason's

8    subjective complaints when assessing her limitations."  (Op. Mem. at 18-19.)  Indeed,

9    Ms. Jason admits that the ALJ's reasons for giving Dr. Magnus's opinions little weight

10   "may be valid reasons in principal [sic]," but nevertheless argues that they are not valid in

11   this case.  (Op. Mem. at 18.)   Based on *Ryan v. Commissioner*, 528 F.3d 1194, 1199-

12   1200 (9th Cir. 2008), Ms. Jason argues that the ALJ erred in rejecting Dr. Magnus's

13   opinions by questioning her credibility where Dr. Magnus specifically found Ms. Jason to

14   be credible (AR at 1315), employed certain clinical diagnostic techniques, and stated that

15   Ms. Jason's pain was caused by a combination of disc bulges with foraminal stenosis and

16   myofascial pain and likely exacerbated by chronic anxiety (*id.* at 1312, 1314).  (*See* Op.

17   Mem. at 19.)

18       In *Ryan*, the Ninth Circuit stated that "an ALJ does not provide clear and

19   convincing reasons for rejecting an examining physician's opinion by questioning the

20   credibility of the [claimant's] complaints where the doctor does not discredit those

21   complaints and supports his ultimate opinion with his own observations."  528 F.3d at

22   1199-1200.  However, the Ninth Circuit goes on to state that there was "nothing in the

1    record to suggest" the examining physician in that case relied on the claimant's own

2    "description of her symptoms . . . more heavily than his own clinical observations." *Id.* at

3    1200.  The same is not true with respect to Dr. Magnus's reports.

4         Here, the evaluation forms completed by Dr. Magnus strongly suggest that the

5    ALJ relied heavily on Ms. Jason's self-reporting or at least did so to a greater extent than

6    he relied on any objective clinical findings of his own.  (*See generally* AR at 1145-50,

7    1312-16.)  For example, Dr. Magnus opines that Ms. Jason's pain interfered constantly

8    with her attention and concentration, but there is no indication that he actually tested her

9    ability to concentrate or stay on task.  Further, although Dr. Magnus attributed Ms.

10   Jason's reported pain to stenosis and myofascial pain, he does not explain how these

11   disorders provide an objective basis to conclude that Ms. Jason cannot interact closely

12   with co-workers or supervisors or have contact with the public.  In addition, Dr.

13   Magnus's opinion that Ms. Jason can sit for longer periods of time if she is in a recliner

14   strongly suggests that he was relying on his patient's self-reporting rather than any

15   objective clinical findings.[8]  Based on the court's review of Dr. Magnus's opinions, the

16   ALJ did not err in giving them "little weight" because those reports were largely based on

17   Ms. Jason's self-reports which the ALJ properly discounted as not credible.  *See*

18   *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a

19   treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports

20   _____

21        [8] The above examples are just a few from Dr. Magnus's reports that support the ALJ's
     conclusion that Dr. Magnus opinion is largely based on Ms. Jason's subjective reports.
22   Additional examples are evident in Dr. Magnus's reports.  (*See generally* AR at 1145-50, 1312-
     16.)

1  that have been properly discounted as incredible.") (citing *Morgan*, 169 F.3d at 602; *Fair*

2  *v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)).

3      In addition, although not challenged by Ms. Jason, the court finds no error in the

4  ALJ's discrediting of Dr. Magnus's opinions based on their inconsistency with Ms.

5  Jason's reports of managed pain in other physicians' treatment notes or their

6  inconsistency with evidence of Ms. Jason managing her daughters' homeschooling and

7  theatrical training.  (AR at 25, 26.)  When an ALJ rejects a treating physician's opinion

8  that is contradicted by another doctor, the ALJ must provide specific, legitimate reasons

9  based on substantial evidence in the record.  *See Valentine v. Comm'r of Soc. Sec.*

10 *Admin.*, 574 F.3d 685, 692 (9th Cir. 2009); *Ryan*, 528 F.3d at 1198.  An ALJ satisfies the

11 burden of providing specific, legitimate reasons to reject a controverted treating physician

12 opinion where he or she sets out a "detailed and thorough summary of the facts and

13 conflicting clinical evidence, stating his interpretation thereof, and making findings."

14 *Magallanes v. Bowen*, 881 F.2d 747, 757 (9th Cir. 1989).  Here, in concluding that he

15 would give little weight to Dr. Magnus's opinions, the ALJ referenced evidence in the

16 record concerning Ms. Jason's activities homeschooling and managing the theatrical

17 training of her daughters, and he also cited specific pages of Ms. Jason's medical records

18 evincing her reports of little or no pain after receiving treatment.  (*See* AR 25, 26.)  Based

19 on the foregoing, the court concludes that the ALJ provided clear and convincing reasons

20 for his treatment of Dr. Magnus's opinions and did not commit any error.

21 //

22 //

1

    **2.   Dr. Julie Stroemel**

2       In May 2012, Dr. Julie Stoemel, Ms. Jason's treating psychologist, filled out a

3   form medical opinion questionnaire in which she opined that Ms. Jason had poor to no

4   ability to remember work-like procedures, maintain attention for two-hour segments,

5   maintain regular attendance and be punctual, sustain an ordinary routine without special

6   supervision, work in coordination with or proximity to others without being unduly

7   distracted, make simple work-related decisions, complete a normal workday and

8   workweek without interruptions from psychologically-based symptoms, perform at a

9   consistent pace without an unreasonable number or length of rest periods, deal with

10  normal stress, and would miss work more than twice a month.  (AR at 1152-54.)

11      In the form medical opinion questionnaire, Dr. Stroemel stated that she had

12  diagnosed Ms. Jason with anxiety, bipolar affective disorder, and post-traumatic stress

13  syndrome, and that Ms. Jason's prognosis was chronic in nature and likely to recur over

14  her lifetime.  (*Id.* at 1152.)  Other than these perfunctory statements of Ms. Jason's

15  diagnoses and prognosis, there is no indication in Dr. Stroemel's report that she

16  conducted any clinical diagnostics or relied on her own clinical observations, as opposed

17  to Ms. Jason's subjective reports, in rendering the foregoing opinions concerning Ms.

18  Jason's capabilities and impairments.  (*See id.* at 1152-54.)

19      The ALJ gave "little weight" to Dr. Stroemel's opinions because he found that

20  they were based on Ms. Jason's subjective reports, which he had previously found to be

21  not entirely credible.  (*Id.* at 26.)  The ALJ also found that Dr. Stroemel's opinions were

22

1    "inconsistent with the overall record, including evidence of [Ms. Jason] managing the

2    homeschooling and theatrical training of her daughters."  (*Id.*)

3        Ms. Jason does not argue that Dr. Stroemel's opinions are not based on her

4    subjective reports.  (*See* Op. Mem. at 20-22.)  To the contrary, Ms. Jason argues that the

5    ALJ erred in giving Dr. Stroemel's opinions "little weight" (*id.* at 26) because, in the case

6    of mental impairments, proper diagnostic techniques require the psychologist to consider

7    the patient's own description of her mental impairments.  (Op. Mem. at 21 ("Symptoms

8    are defined as the claimant's own description of her mental impairments.") (citing 20

9    C.F.R. pt. 404, subpt. P, app. 1, 12.00(B)).)  Relying on *Blankenship v. Brown*, 874 F.2d

10   1116 (6th Cir. 1989), Ms. Jason argues that "the report of a psychiatrist [or in this case a

11   psychologist] should not be rejected simply because of the relative imprecision of the

12   psychiatric methodology or the absence of substantial documentation, unless there are

13   other reasons to question the diagnostic techniques."  (Op. Mem. at 21 (quoting

14   *Blankenship*, 874 F.2d at 1121).)

15       Ms. Jason's argument, however, merely begs the question.  The ALJ did not reject

16   or question Dr. Stroemel's methodology per se, but rather the underlying credibility of

17   Ms. Jason's self-reports upon which Dr. Stroemel's methodology and opinions were

18   largely based.  Thus, in this case, ALJ articulated "other reasons to question the

19   diagnostic techniques" of Dr. Stroemel.  *Blankenship*, 874 F.2d at 1121.  Indeed, the ALJ

20   cited two such specific reasons:  (1) the unreliability of Ms. Jason's self-reports upon

21   which Dr. Stroemel's opinion were based, and (2) the inconsistency between Dr.

22   Stroemel's opinions and the evidence of Ms. Jason's activities in homeschooling her

1   daughters and managing their theatrical training.  (*See* AR at 26.)  This constitutes clear

2   and convincing reasons for giving Dr. Stroemel's opinion little weight.  *See Bayliss v.*

3   *Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (upholding the rejection of a

4   psychological assessment where the assessment was not supported by clinical evidence

5   and was based on plaintiff's subjective complaints and information provided by plaintiff);

6   *see also Tommasetti*, 533 F.3d at 1041; *Morgan*, 169 F.3d at 602; *Fair*, 885 F.2d at 605.

7   Thus, the court concludes that the ALJ did not err with respect to his handling of Dr.

8   Stroemel's opinions.

9      **3.  Dr. Enika Cocoli**

10      In June 2011, examining psychologist, Dr. Enika Cocoli opined that Ms. Jason

11   "appears to be relatively unimpaired regarding interactions with peers, supervisors, and

12   the general public."  (AR at 683.)  Dr. Cocoli also opined that Ms. Jason "appears to be

13   cognitively able to handle money and manage funds on her own, as she reports to have

14   done for most of her life."  (*Id.*)  She stated that "[p]yschologically, it is likely that [Ms.

15   Jason] becomes overwhelmed or fails to plan ahead, especially during manic phases."

16   (*Id.*)  She also opined that Ms. Jason's "various medical conditions appear to have created

17   a general state of helplessness and are sufficiently frustrating to interfere with her ability

18   to perform a job on a steady and long-term basis," and that "[h]er symptoms appear to be

19   caused on a more-probable-than-not basis [due] to the pervasiveness of her illnesses."

20   (*Id.*)

21      The ALJ gave Dr. Cocoli's opinions "little weight."  (*Id.* at 25.)  The ALJ

22   provided three reasons for doing so:  (1) Dr. Cocoli's appraisal of Ms. Jason's physical

1  limitations was "beyond her training or specialization," (2) Dr. Cocoli's opinions were

2  based on Ms. Jason's subjective complaints, which the ALJ had previous found to be "not

3  fully credible," and (3) Dr. Cocoli's opinions were at odds with the overall record,

4  including evidence of Ms. Jason's management of her daughters' homeschooling and

5  theatrical training.  (*Id.*)  Ms. Jason argues that the ALJ erred in discounting Dr. Cocoli's

6  for the same reasons she argued above with respect to Dr. Stroemel.  (Op. Mem. at 22.)

7  Ms. Jason also argues that Dr. Cocoli's opinion was not outside her area of expertise

8  because she was "appraising Ms. Jason's psychological reactions to her physical

9  conditions, which she had the expertise to do" (*id.* at 23).

10         With respect to the ALJ's first ground for discounting Dr. Cocoli's opinion, the

11  court agrees that Dr. Cocoli's opinion veers outside her area of expertise.  Dr. Cocoli's

12  opinion that Ms. Jason's various and pervasive medical conditions "created a general

13  state of helplessness" may indeed be an appropriate appraisal of Ms. Jason's

14  psychological response to her illnesses.  (*Id.* at 683; *see also id.* ("Her symptoms appear

15  to be caused on a more-probable-than-not basis [due] to the pervasive nature of her

16  illnesses.").)  However, Dr. Cocoli did not opine that it was Ms. Jason's state of

17  helplessness or Ms. Jason's psychological responses to her illnesses that interfered with

18  her ability to work.  (*See id.*)  Rather, Dr. Cocoli concluded that Ms. Jason's "various

19  medical conditions" prevented her employment.  (*See id.* at 683 ("[H]er various medical

20  conditions [(1)] appear to have created a general state of helplessness and [(2)] are

21  sufficiently frustrating to interfere with her ability to perform a job on a steady and long-

22  term basis.").)  Because Dr. Cocoli is a psychologist and not a medical doctor, she is not

ORDER- 24

1    qualified to assess the medical, as opposed to psychological, aspects of Ms. Jason's

2    condition.

3         Where a provider renders an opinion that is outside the scope of her treatment

4    expertise and/or specialty, the ALJ does not err in according that opinion little or no

5    weight. *See Holohan v. Massanari*, 246 F.3d 1195, 1203, n.2 (9th Cir. 2001) ("[A]

6    treating physician's opinion on some matter may be entitled to little if any weight . . . if

7    the treating physician . . . offers an opinion on a matter not related to her or his area of

8    specialization); *Brosnahan v. Barnhart*, 336 F.3d 671, 676 (8th Cir. 2003) (concluding

9    the ALJ did not commit error in discounting opinion of psychologist where it is based

10   partly on the consideration of physical limitations); *Buxton v. Halter*, 246 F.3d 762, 775

11   (6th Cir. 2001) (concluding that a psychologist is not qualified to opine regarding

12   disability based on underlying physical conditions); *Galinski v. Astrue*, No. C11-516-

13   RSL-JPD, 2011 WL 7070323, at *11 (W.D. Wash. Dec. 16, 2011) (concluding that ALJ

14   properly discounted an examining psychologist's opinion because the psychologist relied

15   upon physical symptoms in addition to psychological symptoms to form her opinion that

16   the plaintiff could not return to work); *Weilep v. Astrue*, No. CV-09-48-CI, 2010 WL

17   395769, at *7 (E.D. Wash. Jan. 25, 2010) (concluding that ALJ did not err in discounting

18   psychologist's opinion where the opinion that claimant could not work was based on a

19   mixture of physical and psychological problems, which went beyond her expertise).[9]

20

21   _____

     [9]Even if the ALJ's reliance on this ground for according diminished weight to Dr.
22   Cocoli's opinion was error, it was harmless error because the ALJ gave other valid reasons for
     discounting Dr. Cocoli's opinion. *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055

1    The ALJ also rejected Dr. Cocoli's opinions on the same grounds as he rejected

2    Dr. Stroemel's opinions—that the opinions are based on Ms. Jason's self-reports which

3    are not entirely credible and that they are inconsistent with the overall record including

4    evidence of Ms. Jason's homeschooling of her daughters and management of their

5    theatrical training.  (AR at 25.)  The court concludes, on the same grounds as discussed

6    above, that the ALJ did not err in concluding that Dr. Cocoli's opinion should be

7    accorded little weight on these grounds as well.  (*See supra* § III.C.2.)  The court

8    concludes that the ALJ provided clear and convincing reasons for according Dr. Cocoli's

9    opinions little weight, and therefore did not commit any error.

10   **D.  Step Five in the Sequential Process**

11       Ms. Jason argues that the ALJ erred at step five in the sequential process and that

12   his assessment of her residual functional capacity was not supported by substantial

13   evidence.  (Op. Mem. at 23.)  Specifically, Ms. Jason argues that the ALJ erred in his

14   assessment that there were other jobs in the national economy that Ms. Jason could

15   perform because "his residual functional capacity finding and hypothetical questions to

16   the VE [vocational expert] did not accurately reflect Ms. Jason's actual limitations

17   because they failed to account for the opinions of Ms. Jason's treating and examining

18

19

20   (9th Cir. 2006) (stating that an ALJ's error is harmless where such error is inconsequential to the
ultimate non-disability determination); *Carmickle*, 533 F.3d at 1162 (concluding that a single
erroneous basis for an AL''s determination is harmless error if valid reasons supporting that
21   determination remain); *e.g., Townsend v. Astrue*, No. 6:12-CV-00261-SI, 2013 WL 687042, at
*4 n.1 (D.Or. Feb.25, 2013) ("Because the ALJ provided a legally sufficient reason to reject [the
treating physician's] opinion, however, the Court need not consider" plaintiff's argument
22   challenging one of several reasons the ALJ gave for rejecting that opinion) (citing *Carmickle*).

1    physicians, as well as her testimony." (*Id.*)  Thus, Ms. Jason premises her final objection

2    on a restatement of all her prior arguments.  Because the court finds no error in the ALJ's

3    handling of Ms. Jason's testimony or the opinions of her treating and examining

4    physicians, the court likewise finds no error in the ALJ's assessment at step five. *See*

5    *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

6                                **IV.    CONCLUSION**

7           For the foregoing reasons, the court AFFIRMS the final decision of the

8    Commissioner and DISMISSES this action WITH PREJUDICE.

9           Dated this 5th day of February, 2015.

10

11

12    _____

13    JAMES L. ROBART
       United States District Judge

14

15

16

17

18

19

20

21

22

ORDER- 27